## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PLAINTIFF,<br><br>        Plaintiff,<br><br>    v.<br><br>ELON MUSK,<br>in his individual capacity;<br><br>BROOKE ROLLINS,<br>in her official capacity as<br>Secretary of Agriculture, and<br>in her individual capacity;<br><br>STEVEN BRAMMER,<br>in his individual capacity;<br><br>PATRICIA ST. CLAIR;<br>in her individual capacity;<br><br>HEATHER IHLENFELDT,<br>in her individual capacity;<br><br>DERRIK ALLEN,<br>in his individual capacity;<br><br>VIVIAN HUTSON,<br>in her individual capacity;<br><br>    and<br><br>JOHN and JANE DOES 1–10,<br>in their individual capacities,<br><br>    Defendants. | )<br>)<br>)  Civil Action No:_____<br>)<br>)  **JURY TRIAL DEMANDED**<br>) |

Case: 1:25−cv−01288   JURY DEMAND
Assigned To : Unassigned
Assign. Date : 4/25/2025
Description: Pro Se Gen. Civ. (F−DECK)

### COMPLAINT

COMES NOW Plaintiff  ("Plaintiff"), and files this Complaint against Defendants

Elon Musk ("Musk"), Brooke Rollins ("Rollins"), Steven Brammer ("Brammer"), Patricia

St. Clair ("St. Clair"), Heather Ihlenfeldt ("Ihlenfeldt"), Derrik Allen ("Allen"), Vivian

**RECEIVED**

APR 2 5 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Hutson ("Hutson"), and Defendants John and Jane Does 1-10 (unknown at this time), all sued in their individual capacities, for conspiring to violate his civil and constitutional rights pursuant to 42 U.S.C. § 1985(3), or for having knowledge of the same and failing to prevent it from occurring pursuant to 42 U.S.C. § 1986, along with injunctive and declaratory relief, compensatory and punitive damages, and in support thereof states as follows:

## INTRODUCTION

1.     Defendant Elon Musk, acting as an advisor to the President and federal agencies, has spearheaded an AI-driven purge of the federal workforce that disproportionately targets civil rights enforcement officials—particularly those responsible for adjudicating discrimination complaints under Title VII and federal EEO laws.

2.     Musk's reckless endorsement of artificial intelligence (AI) job eliminations has resulted in the unlawful termination and suppression of federal EEO personnel, effectively dismantling civil rights enforcement within federal agencies. Plaintiff has faced the revocation of his granted remote work reasonable accommodation, with no regard for any actual changes in his condition that would warrant reevaluation, since the purpose of said reevaluation is to coerce Plaintiff to involuntarily resign due to being unable to carry out his duties in the workplace after being forced to return to work in the office at USDA headquarters without equally effective accommodations.

3.     This orchestrated campaign violates the Administrative Procedure Act (APA), due process rights, and civil rights laws by using biased AI models to eliminate positions responsible for protecting the rights of federal employees.

4.      Musk's intentional and reckless actions have caused Plaintiff severe economic, reputational, and emotional distress, warranting punitive damages of $1 billion to deter future misconduct.

5.      At its core, this case is about dignity. This isn't just about accommodation. It's about the denial of dignity, something we in America hold sacred.

6.      Dignity is the invisible scaffolding that allows each of us to show up to work with our heads held high, regardless of disability, background, or circumstance. When the government, of all institutions, strips that away through covert retaliation, forced reevaluation, or political gamesmanship—it violates the very covenant between citizen and state.

7.      Plaintiff did not ask for privilege—he asked for what the law guarantees: an equitable opportunity to do his job with dignity, as guaranteed under the Rehabilitation Act. Remote work was not a luxury, nor just a term of employment. It was a lifeline—one legally recognized, medically supported, and operationally proven. And yet, USDA officials sought to convert that dignity into a disciplinary trap, coercing him to either surrender his rights or be branded uncooperative.

8.      That's the heart of this lawsuit. Not entitlement. Not optics. But the raw, human, sacred right to dignity.

9.      When America denies that right to its own civil servants—particularly those with disabilities—it doesn't just break the law. It breaks faith with the very principles it claims to defend. Therefore, this suit is brought in the spirit of justice and to hold those who viciously trample on the rights of the disabled accountable.

**JURISDICTION AND VENUE**

10.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

11.    This Court possesses proper subject matter and personal jurisdiction over the parties.

12.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia. The decisions, policies, and actions challenged in this Complaint were made and executed by all Defendants (except Musk) at the headquarters of the United States Department of Agriculture ("USDA"), located in Washington, D.C. Musk, a senior advisor to President Donald J. Trump, volunteers or works at the Department of Government Efficiency ("DOGE"), which is located in Washington, D.C. Musk's advice and policy direction occurred either through DOGE or in media outlets that are headquartered in Washington D.C. and thus has significant contacts with the District of Columbia for the Court to have personal jurisdiction over Musk.

**Defendants' Ultra Vires Conduct and the Inapplicability of Qualified Immunity**

13.    Plaintiff brings this action pursuant to 42 U.S.C. § 1985(3) for conspiracy to deprive a person of the equal protection of the laws and equal privileges and immunities under the law. Defendants St. Clair, Allen, Hutson, Ihlenfeldt, collectively (the OASCR defendants) and other unknown actors (John and Jane Does 1-10) are sued in their individual capacities for actions taken outside the scope of their lawful authority and in violation of clearly established statutory and constitutional rights.

14.    The OASCR defendants are not entitled to qualified immunity, as their conduct violated clearly established law under the Rehabilitation Act of 1973, which prohibits discrimination and retaliation against qualified individuals with disabilities and requires that reasonable accommodations be evaluated through individualized assessments, not subject to blanket revocation or reevaluation without cause. The OASCR Defendants knew

3

or should have known that their actions were unlawful. By enforcing the blanket reassessment scheme without legal justification, they violated clearly established constitutional rights. Their conduct is not protected by qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800 (1982).

15.    The USDA's own guidance explicitly stated that their Return to Office (RTO) policy "does not supersede existing reasonable accommodations." Nonetheless, the OASCR Defendants conspired to implement a blanket reassessment policy that treated remote work as an accommodation of "last resort," revoking said accommodation and forcing Plaintiff and others similarly-situated into an interactive process the OASCR defendants entered into in bad faith in order to revoke his remote accommodation and force Plaintiff to return to work at the USDA headquarters office without equally effective alternate accommodations—even though his remote work accommodation had already been proven effective and no change in his medical condition had occurred warranting reevaluation.

16.    The OASCR defendants may attempt to argue that they were following guidance from Secretary Brooke Rollins or the USDA Office of Operations and are thus protected from suit under the doctrine of qualified immunity. However, following orders does not shield government officials from liability when those orders are manifestly unlawful and violate well-established rights. Defendants had a duty to uphold the law, not to carry out discriminatory policies under color of official authority. Their actions were not only unauthorized, but also motivated by discriminatory animus against employees with disabilities who received remote work accommodations, and constituted harassment, coercion, and retaliation in violation of federal law.

17.    The actions taken by OASCR defendants were ultra vires, meaning they exceeded the scope of their lawful authority and were taken without legal justification. Under the Rehabilitation Act, agencies may not revoke or reassess granted reasonable

4

accommodations absent an individualized assessment, a material change in the employee's medical condition, or demonstrable undue hardship. None of these conditions existed in Plaintiff's case or in the cases of similarly situated disabled employees. Nevertheless, Defendants implemented and enforced a blanket policy mandating the reevaluation of all existing remote work accommodations—directly contradicting USDA's own guidance that the Return-to-Office (RTO) policy "does not supersede existing reasonable accommodations."

18.    By acting to, or directing subordinate officials to, reassess, deny, or alter existing reasonable accommodations without individualized review, the OASCR defendants acted outside the scope of their delegated authority and contrary to binding federal law, including: The Rehabilitation Act of 1973, which prohibits disability-based discrimination in federal employment and mandates the provision of reasonable accommodations; EEOC Enforcement Guidance 915.002, which affirms that reassignment—not remote work—is the "accommodation of last resort"; 5 U.S.C. § 2301(b)(2) and (b)(8), which require fair treatment and prohibit arbitrary personnel actions; and 5 U.S.C. § 2302(b)(12), which forbids any personnel action that violates a law, rule, or regulation implementing a merit system principle.

19.    Because the OASCR defendants acted without legal authority and in clear violation of well-established legal standards, their conduct is not shielded by qualified immunity. Their ultra vires conduct strips these federal officials of such protections, especially where—as here—the constitutional and statutory rights at stake are clearly established, and the officials had actual notice of the unlawfulness of their actions. As such, Defendants' actions are void and subject to judicial remedy, including injunctive and declaratory relief, and the appointment of a federal monitor to ensure compliance with anti-discrimination mandates. Accordingly, this Court has jurisdiction under 28 U.S.C. § 1331 and §

5

1343(a)(3), and Plaintiff seeks both compensatory and punitive damages under 42 U.S.C. § 1985(3) for the intentional, knowing, and reckless conduct of Defendants acting under color of law but outside the bounds of legal authority.

20.     This Court has personal jurisdiction over Defendant Musk because Musk, at all times relevant, served as a volunteer advisor to the Trump Administration in matters relating to federal government operations, including remote work policy, through his role in the Department of Government Efficiency (DOGE), which maintains its operational base in Washington, D.C. Additionally, the editorial co-authored by Musk and published in The Wall Street Journal—which forms the basis of the discriminatory intent alleged herein—was disseminated and directed toward federal agencies headquartered in Washington, D.C., including the U.S. Office of Personnel Management (OPM) and the U.S. Department of Agriculture (USDA). Musk maintains sufficient minimum contacts with the District of Columbia such that the exercise of jurisdiction over him comports with traditional notions of fair play and substantial justice.

21.     Defendants Rollins, Brammer, and Hutson are sued in their individual capacities for her failure to take action to prevent the ongoing conspiracy to deprive Plaintiff of his clearly established rights under the Fifth Amendment and the Rehabilitation Act. As the Secretary of Agriculture and final policymaker for the U.S. Department of Agriculture, Defendant Rollins had actual and constructive knowledge of the discriminatory blanket reassessment policy through Plaintiff's whistleblower disclosure sent directly to her via email. Despite this notice, she failed to intervene, correct the unlawful directive, or prevent her subordinates from implementing it.

22.     Plaintiff sues Defendant Rollins in her individual capacity for damages under 42 U.S.C. §§ 1985 and 1986, and in her official capacity solely for injunctive and declaratory relief under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706.

don't you stop harassing me and stop this process across the board and stand up for justice Sir?

124.    On April 21, 2025, in response to said email set forth in Ex. 11, Allen and St. Clair informed Plaintiff that he had accepted the Deferred Resignation Program 2.0 (DRP 2.0) and would be placed on paid administrative leave effective April 30, 2025 after completing several off-boarding tasks. Allen forwarded Plaintiff an email wherein HR Specialist Mechele Towe indicated Plaintiff had accepted the DRP 2.0 contract and specified that Plaintiff would need to prepare to be placed on administrative leave on April 30, 2025. St. Clair sent and forwarded an email to Plaintiff with instructions to begin offboarding by completing various knowledge sharing tasks for his review. Ihlenfeldt, in response to Allen's email, responded that Plaintiff's RA reevaluation case was now closed. A copy of that email containing these messages is set forth in Ex. 12.

125.    The DRP 2.0 program was offered from April 1, 2025, and ran through April 8, 2025. This program mirrors the benefits of an initial first offering which, in exchange for employees agreeing to resign effective September 30, 2025, and waiving their right to file a complaint or sue USDA, employees will be placed on paid administrative leave starting on or around May 1, 2025 in the interim and not have to work. A copy of an email from USDA explaining how the program works and the DRP 2.0 contract is set forth in Ex. 13.

126.    USDA employees who were interested in the DRP 2.0 program were to indicate their interest by clicking an "I'm interested" pushbutton on or before April 8 in the eHR website link. A subsequent link would be sent with the contract to employees who had indicated their interest which they would have to sign and submit on or around April 15, 2025, and click an "accept" pushbutton in the eHR system, in order to be accepted into the program. However, all employees who only indicated interest and did not submit a signed

contract and/or electronically accept the agreement would not be considered as having been accepted into the program.

127.    Although Plaintiff initially clicked the "I'm interested" button associated with the DRP 2.0 program, Plaintiff never signed and submitted the DRP 2.0 agreement nor clicked any box indicating his acceptance of the DRP 2.0 contract. A copy of his interest only verification of the DRP 2.0 from the eHR system is set forth in Ex. 14.

128.    In fact, on April 8, 2025, Plaintiff submitted a email seeking clarification about the DRP 2.0 contract and requesting amendments to said contract to OHRM Director Rhonda Carr. In said email, Plaintiff explicitly stated that any expression of "interest" in the DRP 2.0 program submitted by Plaintiff was not to be construed as an acceptance of the contractual offer. Plaintiff further requested amendments to the contract and requested that legally required disclosures under the Older Workers Benefit Protection Act (OWBPA) be sent to him before he clicked the "I'm interested" button. Said email was not substantively responded to prior to the deadline to show interest in the DRP 2.0 program. A copy of the email Plaintiff sent to Rhonda Carr requesting said amendment is set forth in Ex. 14.

129.    On April 21, 2025, Plaintiff responded via email to Allen's and St. Clair's false statements or   insinuations he had signed the DRP 2.0 contract by forwarding to them documentary evidence—the email he previously provided to Carr requesting amendments to the contract—to them, Carr and to Heather Ihlenfeldt, the Reasonable Accommodation Coordinator. A copy of the email chain documenting these events in the current and prior paragraph is set forth in Ex. 13.

130.    Later that day, Rhonda Carr confirmed that neither Plaintiff nor herself (the Agency's designee with Signature Authority for the DRP 2.0 program) had signed the contract and Plaintiff was not accepted into the DRP 2.0 program.

131.    Accordingly, a reasonable inference arises that St. Clair, Allen, Ihlenfeldt, and and unknown others conspired to violate Plaintiff's right of continued Federal employment under the 5th Amendment by claiming he accepted the DRP 2.0 and took additional actions by advising Plaintiff to onboard (Allen and St. Clair) and canceling his reasonable accommodation case (Ihlenfeldt) in furtherance of the conspiracy.

132.    In addition, neither Allen, St. Clair rescinded their actions or directives after being placed on notice by Rhonda Carr that he had not signed or accepted the DRP 2.0 agreement.

133.    Allen's, St. Clair's, and Ihlenfeldt's statements, actions and omissions constituted an agreement to conspire, and deliberate acts in furtherance of a conspiracy, to violate his 5th Amendment Constitutional right of due process in connection with the loss of his property right of continued Federal employment, right to be free from retaliation for engaging in protected activity under the Rehabilitation Act.

134.    As a result of the conspiracy, Plaintiff suffered emotional distress, exacerbation of his PTSD, and reputational harm; his coworker, a timekeeper, was notified he accepted the DRP 2.0 when had not. Plaintiff has a reputation of a stellar employee and not a quitter and has publicly denounced the DRP program, but the Agency's actions tarnished his reputation. See Ex. 12.

**Musk's Threat Of Removal Of Plaintiff Via the "5 Bullets" E-mail**

135.    Additionally, Plaintiff was informed by Elon Musk via Twitter on or around February 22, 2025 and continuing, that if he did not send a weekly email listing what he did that week, he would be subject to disciplinary action or possible termination. "Consistent with President @realDonaldTrump's instructions, all federal employees will shortly receive

34

an email requesting to understand what they got done last week," Musk wrote. "Failure to respond will be taken as a resignation." [5]

136.    This message was followed by a similar email issued by OPM directly to Plaintiff's USDA email, requesting 5 bullet points describing tasks Plaintiff accomplished last week, upon information and belief, at Musk's direction. This coercive and arbitrary directive was issued under the guise of productivity tracking but served as an unlawful condition on Plaintiff's continued employment. Given Plaintiff's full-time status in the competitive service, this action—especially when paired with the forced reevaluation and DRP 2.0 resignation scheme—constitutes a violation of his Fifth Amendment right to continued employment without due process. Upon information and belief, this directive was influenced or encouraged by Elon Musk's stated goals of purging allegedly "unproductive" federal workers, forming another step in the broader conspiracy to marginalize individuals with disabilities and undermine merit-based protections.

### Harm Suffered by Plaintiff As a Result of The Defendant's Actions and Inactions

137.    As a direct result of Defendants' actions and omissions, Plaintiff has suffered significant emotional distress; financial strain, including out-of-pocket costs for medical consultations and documentation forced by an unlawful reevaluation process; physical aggravation of underlying chronic conditions, exacerbated by the stress and fear of being forced into an unsafe work environment without necessary accommodations; lost promotional or career advancement opportunities due to retaliatory actions and marginalization; harm to professional reputation and standing; and loss of dignity and morale, resulting from being treated as a liability despite receiving fully successful performance ratings and formal commendations in FY23 and FY24.

---

[5] Musk, Elon. Twitter Post. February 22, 2025. https://x.com/elonmusk/status/1893386883444437415

## COUNT I

## CIVIL CONSPIRACY TO VIOLATE SECTION 501 OF THE REHABILITATION ACT

### (29 U.S.C. § 791; 42 U.S.C. § 1985(3))

**Against Defendants Elon Musk, Brooke Rollins, Steven Brammer, Patricia St. Clair, Vivian Hutson, Heather Ihlenfeldt, and John/Jane Does**

138.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

139.    Defendants Musk, St. Clair, Allen, and Ihlenfeldt, in concert and conspired to deprive Plaintiff, as a member of a protected class (individuals with disabilities), of the equal protection of the laws and of rights secured by the Rehabilitation Act.

140.    Defendant Elon Musk conspired with federal officials to orchestrate a biased workforce reduction strategy that unlawfully targeted civil rights adjudicators in violation of 42 U.S.C. § 1985(3).

141.    Musk's influence led to the development and deployment of AI-driven job elimination models that disproportionately impacted employees engaged in civil rights enforcement.

142.    These actions amount to a conspiracy to suppress internal federal complaints of discrimination, eliminate EEO enforcement roles, and weaken civil rights protections across the federal government.

143.    The agreement was followed by coordinated actions by Defendants St. Clair, Allen, and Ihlenfeldt, via meetings, verbal and written correspondence, to reevaluate, undermine, and effectively revoke previously granted reasonable accommodations constituted an invidiously discriminatory animus toward individuals with disabilities.

144.    Despite USDA policy stating that the Return to Office (RTO) mandate "does not supersede existing reasonable accommodations", Defendants entered into an agreement and

executed a policy to reassess and potentially revoke all remote work accommodations that were more than one year old, without regard to performance, need, or effectiveness.

145. St. Clair, as one of the leaders of the conspiracy, directed all supervisors on or around Feb. 27, 2025, contemporaneously with the OASCR All-Hands meeting, to reevaluate their supervisees' existing reasonable accommodations of remote work or related to remote work and directed Heather Ihlenfeldt to reevaluate said accommodations as an accommodation of last resort, with a focus on accommodating the employee in the USDA D.C. headquarters office, with an intent to discriminate against them on the basis of disability by attempting to achieve a goal to revoke all existing, and pending requests for, remote accommodations.

146. Allen directed, in bad faith, Ihlenfeldt to initiate the interactive process with Plaintiff, himself, and Ihlenfeldt in order to accomplish this goal.

147. Allen sent Plaintiff an email on March 24, 2025, and carbon-copied Hutson, stating:

> Per guidance from Ms. St. Clair, all existing Reasonable Accommodation request/approvals that exceeded a year from the original approval date, would have to be resubmitted for reconsideration or approval. The agency is to review the requests and requirements to determine if the accommodation(s) can be provided in the assigned office location. I don't recall you resubmitting another request.

148. Defendant Allen's enforcement of the directive to require resubmission of all Reasonable Accommodations exceeding one year — particularly remote work accommodations that by definition cannot be fulfilled in an in-office setting — reflects his affirmative agreement with the unlawful goals of the conspiracy. Acting in coordination with Defendants St. Clair and Hutson (the 2nd level reviewer of all internal appeal of RA request denials), and with knowledge of Plaintiff's protected disability status, Allen did not merely follow orders. He internalized and operationalized a discriminatory policy designed

to eliminate long-standing accommodations, discourage protected activity, and drive out qualified employees with disabilities, including Plaintiff, under the guise of administrative review with reckless disregard for their rights under the Rehabilitation Act.

149. Allen's email, sent on March 24, 2025, was not a neutral inquiry but a calculated step in furtherance of a coordinated plan to revoke or frustrate disability accommodations already approved under the Rehabilitation Act. His language echoed the internal rationale promoted by Defendant St. Clair, who had no legal basis for categorically re-reviewing RA approvals based on duration alone. By reinforcing this framework and initiating pressure on Plaintiff to "resubmit" his accommodation for reevaluation, Allen joined the conspiracy with full knowledge of its likely consequences, including the constructive denial of accommodations and the removal of protected employees.

150. At a minimum, Allen knowingly and willfully furthered the conspiracy's objectives, and his conduct constitutes an overt act in furtherance of a shared unlawful purpose: to undermine USDA's disability infrastructure, chill protected activity, and eliminate personnel viewed as obstacles to RTO and workforce reduction initiatives.

151. Ihlenfeldt, via St. Clair's directives, entered into all interactive processes for RA evaluations and reevaluations, at all times relevant, in bad faith with the goal of recommending to each supervisor, including Allen, that the employee's request for remote work accommodations, including Plaintiff's, be denied.

152. Ihlenfeldt sent an email to Plaintiff requesting he take place in an interactive process so his reasonable accommodation of remote work can be reevaluated.

153. Hutson was placed on notice by OASCR officials that she would be the appellate authority for internal appeals of all reasonable accommodation request denials, and upon information and belief, agreed to deny all appeals of remote work accommodations in order to achieve this goal.

154.    The blanket reassessment directive lacked a legitimate government interest, was not narrowly tailored, and failed to meet even rational basis review, let alone heightened scrutiny, given the lack of individualized assessment required by law.

155.    As an overt act in furtherance of the conspiracy, Defendants Patricia St. Clair, Heather Ihlenfeldt, and Derrik Allen, jointly implemented a blanket reassessment policy that required all existing remote work accommodations over one year old to be resubmitted for review, regardless of medical documentation or individualized circumstances. This was carried out through coordinated communications including: (1) directives from St. Clair during the February 27, 2025 All-Hands meeting;  (2) email confirmations from Allen directing Plaintiff to report to the office and resubmit his RA (March 24, 2025);  (3) an official meeting invitation by Ihlenfeldt (March 28, 2025) indicating the reassessment was based on "new business operating requirements" connected to RTO; and (4) a failure by Hutson, the reviewing official, to intervene or stop the reevaluation despite her authority and directives to Allen to .

156.    These overt acts demonstrate a coordinated and intentional effort to implement a policy that targeted disabled employees, stripped them of their accommodations without due process, and forced them to choose between their health and their job security.

157.    As a result of the conspiracy, Plaintiff was subjected to disparate treatment compared to similarly situated employees without disabilities who were allowed to continue working remotely if they lived more than 50 miles outside the National Capitol Region or a USDA hub without any caveats such as undergoing medical examinations to justify their continued remote work status. Defendants acted with reckless disregard for Plaintiff's federally protected rights.

158.    In addition, other qualified disabled employees with remote work accommodations working at other Agencies, including but not limited to the Department of Defense, were

exempted from the RTO policy and did not have to undergo reevaluation of their remote work accommodations; which constitutes proof that the USDA conspirators actively participated in the conspiracy and were not just following orders.

159.    As a direct and proximate result of Defendants' actions, Plaintiff suffered damages including emotional distress, anxiety, reputational harm, diminished morale, and the ongoing threat of job loss and forced return to an unaccommodated workspace.

## COUNT II
### FAILURE TO PREVENT CIVIL RIGHTS VIOLATIONS
#### (42 U.S.C. § 1986 – Against Defendants Rollins, Hutson, and Brammer, in their individual capacities)

160.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

161.    Under 42 U.S.C. § 1986, any person who has knowledge that a conspiracy under § 1985 is about to be committed, and who has the power to prevent or aid in preventing the commission of the same but neglects or refuses to do so, shall be liable to the party injured.

162.    On March 24, 2025, Plaintiff submitted a detailed whistleblower complaint directly to Secretary Brooke Rollins, documenting the unlawful directive issued by Patricia St. Clair requiring reassessment of all previously granted reasonable accommodations (RAs) for remote work older than one year. This directive conflicted with USDA's official Return to Office (RTO) guidance and the Rehabilitation Act, and it effectively targeted disabled employees—including Plaintiff—for discriminatory treatment.

163.    Despite occupying the highest leadership role within the Department and having full authority to intervene, Defendant Rollins failed to act to prevent or investigate the misconduct. Her inaction permitted the unlawful directive to continue and signaled institutional ratification of a policy that lacked legal basis.

164.    Similarly, Defendant Vivian Hutson—a senior official within OASCR and the designated internal reviewer of denied RA decisions—was aware of the discriminatory policy. She was present at the February 27, 2025, OASCR All-Hands meeting where St. Clair announced the blanket reassessment, and she was copied on related internal correspondence thereafter. Hutson had both the knowledge and authority to intervene but took no steps to prevent or halt the illegal conduct.

165.    Both Rollins and Hutson had actual or constructive knowledge of the conspiracy described in Count II. Each had the power, duty, and opportunity to prevent or remedy the unlawful reassessment policy but instead allowed the violations to proceed unimpeded. Their collective inaction facilitated the continuation of the discriminatory scheme in violation of the Rehabilitation Act and constitutional protections under the Fifth Amendment.

166.    Defendant Steven Brammer, Associate General Counsel for USDA, was directly copied on Plaintiff's March 24, 2025 whistleblower complaint, which detailed the unlawful blanket reassessment directive and its conflict with the Rehabilitation Act and USDA's own RTO guidance.

167.    As legal counsel, Brammer had a heightened duty to evaluate the legality of departmental policies and to advise leadership on compliance with federal disability law.

168.    Despite his clear opportunity to intervene, provide corrective legal guidance, or halt the implementation of the policy, Brammer took no discernible action to prevent the ongoing violations. His failure to act, despite actual knowledge and the power to do so, renders him liable under 42 U.S.C. § 1986 for aiding and abetting the continuation of the discriminatory conspiracy.

169.    As a direct result of Rollins, Hutson's, and Brammer's failure to act, Plaintiff Plaintiff suffered: Emotional distress and psychological injury, including anxiety, panic

attacks, and insomnia; Physical aggravation of his pre-existing medical conditions due to fear of accommodation revocation; Financial harm, including pressure to incur unnecessary medical costs; Reputational damage and diminished professional standing despite high performance ratings; And ongoing uncertainty and fear of termination or removal, shared by similarly situated employees with disabilities.

170.    The failure of Defendants Rollins and Hutson to act was willful, malicious, and in reckless disregard of Plaintiff's federally protected rights. Their dereliction of duty under § 1986 makes them jointly and severally liable for damages, including but not limited to compensatory and punitive damages, resulting from the conspiracy alleged under § 1985(3).

171.    Plaintiff seeks all legal and equitable remedies available under 42 U.S.C. § 1986.

## COUNT III
## CONSPIRACY TO VIOLATE PLAINTIFF'S FIFTH AMENDMENT RIGHTS
### (42 U.S.C. § 1985(3))

**(Against Defendants St. Clair, Allen, and Ihlenfeldt, in their individual capacities)**

172.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

173.    Defendants Patricia St. Clair, Derrik Allen, Heather Ihlenfeldt, and Vivian Hutson, acting individually and in concert, conspired to deprive Plaintiff of his rights under the Fifth Amendment to the United States Constitution, specifically his right to be free from arbitrary government action affecting his property interest in continued employment and in his lawfully granted reasonable accommodation under the Rehabilitation Act.

174.    Plaintiff's approved remote work accommodation, granted on July 18, 2023, was an essential condition of his continued qualification for federal employment and was legally protected under the Rehabilitation Act of 1973. That accommodation was granted following an individualized assessment confirming that remote work was the most effective and appropriate adjustment for Plaintiff's permanent disability.

175.    Despite USDA policy stating that the Return to Office (RTO) mandate "does not supersede existing reasonable accommodations", Defendants entered into an agreement and executed a policy to reassess and potentially revoke all remote work accommodations that were more than one year old, without regard to performance, need, or effectiveness.

176.    On or around Feb. 27, 2025, during a OASCR All-Hands meeting on MS Teams that Plaintiff attended, Plaintiff witnessed St. Clair state that all disabled employees with existing reasonable accommodations of remote work over a year old, and those with pending RA requests of remote work, will be reevaluated. St. Clair further stated she directed RA Coordinator Heather Ihlenfedlt to reevaluate said accommodation requests to see how each employee can be accommodated in the office first with remote work only being considered as an accommodation of last resort.

177.    Accordingly, the directives of St. Clair in the previous paragraph evidence St. Clair's intent to discriminate against qualified disabled employees whose granted remote accommodations or requested remote accommodations are the most effective by revoking or not granting those accommodations and forcing them to return to in-office work.

178.    On March 24, St. Clair further stated in an email to Plaintiff, "Good morning, please work directly with your supervisor to go through the interactive process to determine whether and to what extent we are able to accommodate your return to the office. I have added Mr. Allen to this email. If your request for an accommodation has been reviewed and denied, it will go through the traditional administrative review as set forth in the Reasonable Accommodation Program. As such, I have not reviewed any of your attached documents."

179.    Thus, St. Clair, by her own words and directives, conspired with Elon Musk and took additional steps to violate the civil rights, as established under the Rehabilitation Act, of Plaintiff and  all similarly situated employees under her direct or indirect supervision or

control. St. Clair exhibited her intent to discriminate against Plaintiff and all similarly situated employees on the basis of disability by directing all supervisors and the Rehabilitation Act to engage in a discriminatory evaluation and reevaluation of their existing RAs or pending RA requests with the goal of revoking existing remote work RAs and denying all pending requests for the same.

180.    A reasonable inference can be made that forcing disabled employees to work in an office environment without equally effective accommodations in comparison to remote work accommodations would cause them physical and emotional harm, resulting in them possibly resigning or being removed for performance or conduct issues arising from said failure to provide effective accommodations.

181.    But for the discriminatory evaluations, Plaintiff and all similarly situated employees would have remained qualified had the RA of remote work not been revoked or denied.

182.    Allen directed, in bad faith and in accordance with St. Clair's directive, Ihlenfeldt to initiate the interactive process with himself, Plaintiff, and Ihlenfeldt in order to accomplish this goal. An email from Ihlenfeldt admitting that Allen directed her to initiate the interactive process with Plaintiff and requesting Plaintiff's accommodation be reevaluated is set forth in Ex. 10.

183.    Ihlenfedlt, trained in the Rehabilitation Act, knew or should have known that St. Claire's directives to her and other members of management constituted discriminatory and arbitrary reevaluations of existing RAs and pending RA requests, but agreed to participate in the conspiracy formulated by Musk and advanced by St. Clair, to violate Plaintiff's civil rights under the act.

184.    Ihlenfeldt sent an email to Plaintiff requesting he take place in an interactive process so his reasonable accommodation of remote work can be reevaluated.

44

185.   Hutson was placed on notice by OASCR officials that she would be the appellate authority for internal appeals of all reasonable accommodation request denials, and upon information and belief, agreed to deny all appeals of remote work accommodations in order to achieve this goal.

186.   This policy and its implementation constituted a substantive due process violation, as it was:  Arbitrary and capricious, applying a blanket rule without individualized review; Discriminatory, singling out disabled employees for burdensome reevaluation and denial of access to their accommodations;  and without a legitimate government interest, especially where Plaintiff's outstanding performance showed no undue hardship to the Agency.

187.   Defendants further violated procedural due process by:  Failing to provide Plaintiff with notice or a meaningful opportunity to contest the reassessment;    Requiring Plaintiff to submit new medical documentation under duress, absent any medical change or undue hardship; Proceeding with reevaluation even after admitting, as in the case of Ms. St. Clair, that they had not reviewed the existing RA documentation or its legal basis.

188.   As a direct and proximate result of the conspiracy, Plaintiff suffered risk of loss and/or loss of legally protected accommodation, emotional distress and anxiety, diminished morale, risk of disciplinary action or removal, a stark choice between his health and his job.

189.   The overt acts in furtherance of this conspiracy include, but are not limited to:  St. Clair's issuance of verbal and written guidance directing blanket reassessment of all remote work accommodations over one year old;  Allen's directive requiring Plaintiff to return to the office, despite receipt of Plaintiff's existing RA approval;  Ihlenfeldt's initiation of the interactive process under a pretextual "business functions" review, misrepresenting the purpose of the process;  Brammer's failure to intervene and unethical advice to the OASCR defendants on how to implement the unlawful practice in a manner that minimizes legal

45

risk to the Agency, and Hutson's failure to object to or halt the policy despite her position

as internal reviewer for RA matters, with actual or constructive knowledge of its illegality.

190.   Plaintiff was treated differently from similarly situated USDA employees with

disabilities outside of the OASCR chain of command, who were not subject to blanket

reevaluation or return-to-office demands.

191.   Defendants' conduct was undertaken with reckless disregard for Plaintiff's rights

and with discriminatory animus toward individuals with disabilities who depend on remote

work accommodations.

192.   Plaintiff seeks declaratory and injunctive relief, compensatory damages, and

punitive damages in an amount to be determined by a jury, as well as attorney's fees and

costs pursuant to 42 U.S.C. § 1988.

## Count V

### Violation of the Administrative Procedure Act

### (5 U.S.C. § 706)

### (Against Defendant Rollins in her official capacity as Secretary of Agriculture)

193.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

herein.

194.   Under the Administrative Procedure Act (APA), a reviewing court shall "hold

unlawful and set aside agency action, findings, and conclusions" found to be: (A) arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to

constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction,

authority, or limitations;   (D) without observance of procedure required by law. (See 5

U.S.C. § 706(2)(A)-(D))

195.   Defendants St. Claire, Allen, Brammer, and Ihlenfeldt acted arbitrarily and

capriciously by issuing or enforcing a blanket policy to reevaluate all remote work

reasonable accommodations (RAs) granted over a year ago. This reevaluation policy, carried out without individualized assessments or consideration of the Rehabilitation Act's legal requirements.

196.    Plaintiff placed the head of the Agency, Brooke Rollins, on notice of the unlawful discriminatory enactment of the RTO policy by the OASCR defendants via direct email to official email and to the email dedicated to the Office of the Secretary. Accordingly, it is reasonably inferred that Rollins knew of their actions and upon information and belief, took no action to stop them from continuing to engage in those unlawful acts.

197.    Whether it was informally created or formally adopted, the return-to-office reevaluation directive is unlawful. The OASCR Defendants are liable in their individual capacities for conspiring to implement it.

198.    Defendant Rollins, as Secretary of Agriculture, had the legal power and duty to halt the implementation of the same yet failed to do so — thus triggering APA review in her official capacity.[6]

199.    Rollins' silence and inaction contradicts USDA's own Return-to-Office (RTO) guidance which explicitly stated that existing disability accommodations would not be overridden; Violates established statutory obligations under Section 501 of the Rehabilitation Act, including the requirement to engage in an individualized, interactive process; Was implemented without public notice and comment, in violation of 5 U.S.C. § 553; Operated as a de facto modification of agency policy with tangible effects on employee rights and benefits, thereby qualifying as final agency action subject to APA review.

---

[6] Plaintiff pleads in the alternative under Fed. R. Civ. P. 8(d). While the policy may have originated informally and is *ultra vires*, Defendant Rollins' failure to repudiate or halt its implementation upon direct notice constitutes ratification sufficient to establish official agency action for purposes of APA review.

200.    Defendant Rollins, as Secretary of Agriculture, ratified the unlawful policy through inaction and silence, despite receiving detailed whistleblower disclosures from Plaintiff highlighting the discriminatory nature and legal contradictions of the reevaluation directive.

201.    The ratification of this unlawful informal policy has resulted in legal and tangible harm to Plaintiff and similarly situated employees, including:  Forced compliance with arbitrary documentation demands;  Psychological and emotional distress;  Reputational harm;  Erosion of established reasonable accommodations without due process;  Violation of statutory rights.

## COUNT VI

### CIVIL CONSPIRACY TO VIOLATE SECTION 501 OF THE REHABILITATION ACT
(29 U.S.C. § 791; 42 U.S.C. § 1985(3))

**(Against Defendants Elon Musk, Brooke Rollins, Steven Brammer, Patricia St. Clair, Vivian Hutson, Heather Ihlenfeldt, and John/Jane Does)**

202.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

203.    Section 501 of the Rehabilitation Act of 1973 requires each federal agency to "submit to the Equal Employment Opportunity Commission and to the Committee an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities." See 29 U.S.C. § 791(b).

204.    USDA is statutorily obligated to implement policies and maintain staff necessary to comply with this mandate, including conducting barrier analyses, monitoring promotion data for individuals with targeted disabilities, and issuing timely Final Agency Decisions involving disability discrimination.

205.    Plaintiff serves as a Final Agency Decision (FAD) writer and Compliance Specialist. His position is essential to USDA's fulfillment of its legal responsibilities under

48

Section 501. Plaintiff is among the few employees specifically trained to draft legally sound decisions in cases involving disability discrimination.

206.    Plaintiff has repeatedly flagged insufficient EEO investigations and urged legal compliance with Section 501 in the adjudication process, often encountering resistance or disregard by agency leadership.

207.    In concert with Elon Musk's publicly stated campaign to reduce the federal workforce by eliminating remote accommodations and weakening DEI enforcement, USDA leadership—including Defendants Rollins, Brammer, St. Clair, Hutson, and Ihlenfeldt—undertook a coordinated effort to dismantle USDA's disability rights infrastructure.

208.    As part of this effort, USDA placed multiple Equal Employment Opportunity Specialists—whose roles directly implement Section 501—on indefinite administrative leave, depriving the agency of key personnel responsible for reports to the EEOC and Congress, including barrier analyses and affirmative action metrics.

209.    Upon information and belief, Defendants intend to eliminate these positions through a Reduction in Force (RIF) policy. These actions serve no legitimate operational purpose and are instead aimed at weakening or eliminating statutorily required disability equity functions.

210.    Plaintiff reasonably fears that his own position will be eliminated or downgraded through this RIF process, and/or that he will be involuntarily reassigned to a distant USDA hub under the pretext of proximity to "customers"—even though his duties serve internal USDA personnel, not the public.

211.    These actions constitute a conspiracy to violate Plaintiff's civil rights and disrupt statutory enforcement of Section 501 of the Rehabilitation Act in violation of 42 U.S.C. § 1985(3).

212.    As a direct and proximate result of this unlawful conspiracy, Plaintiff has suffered

and continues to suffer from severe stress, emotional distress, increased medical leave

usage, and ongoing fear of retaliation and job loss.

213.    Defendants' actions have caused irreparable harm and created a chilling effect that

materially interferes with Plaintiff's ability to perform his job duties under Section 501, and

if not enjoined, will undermine USDA's capacity to comply with federal law.

## COUNT VII

### VIOLATION OF EQUAL PROTECTION UNDER THE FIFTH AMENDMENT
**(Against Defendants Elon Musk, Brooke Rollins, Steven Brammer, Patricia St. Clair,
Vivian Hutson, Heather Ihlenfeldt, and John/Jane Does)**

214.    Plaintiff incorporates all prior paragraphs as if fully stated herein.

215.    The Fifth Amendment of the United States Constitution guarantees individuals the right

to equal protection under the law, which prohibits federal actors from treating similarly situated

individuals differently without a rational basis or in a manner motivated by discriminatory

animus.

216.    Defendants, acting under color of federal authority, treated Plaintiff less favorably than

similarly situated non-disabled employees by subjecting him to targeted reevaluation of his

Reasonable Accommodation and including his position in a Reduction in Force process while

allowing non-disabled employees to remain in remote positions without similar scrutiny. This

discriminatory treatment, without a rational basis, constitutes a violation of the Equal

Protection component of the Fifth Amendment to the U.S. Constitution.

217.    Plaintiff was subjected to a targeted reevaluation of his existing, medically supported

Reasonable Accommodation for full-time remote work, despite having received approval based

on a documented disability and successfully performing his duties.

218.    Upon information and belief, numerous non-disabled USDA employees were permitted to continue working remotely without being subjected to medical reevaluation, accommodation recertification, or any adverse personnel action.

219.    Plaintiff's job duties are performed exclusively through written legal analysis and communication with internal USDA personnel, and do not involve public-facing work or field activities that would justify physical relocation or mandatory in-office presence. Nevertheless, Plaintiff's RA was reevaluated under pressure and scrutiny not applied to non-disabled employees.

220.    This disparate treatment constitutes a violation of Plaintiff's right to equal protection under the Fifth Amendment, as there is no rational basis for treating Plaintiff less favorably than non-disabled employees engaged in equivalent remote work.

221.    Defendants' conduct is further exacerbated by their roles in implementing a broader policy—guided in part by Elon Musk's anti-remote and anti-DEI ideology—that disproportionately impacted disabled federal employees and violated the principle of equal application of workplace policies.

## COUNT VIII
### CONSPIRACY TO COERCE, INTIMIDATE, AND RETALIATE IN VIOLATION OF 42 U.S.C. § 12203
*(ADA Title V / Section 504 incorporated via Section 501 of the Rehabilitation Act)*
**Against Defendants Musk, Rollins, St. Clair, Brammer, Hutson, Ihlenfeldt, and John/Jane Does**

222.    Plaintiff incorporates by reference all preceding paragraphs as if fully stated herein.

223.    42 U.S.C. § 12203(b), made applicable to the federal government through the Rehabilitation Act, prohibits any person from coercing, intimidating, threatening, or interfering with any individual exercising rights protected by the ADA and Rehabilitation Act, including the right to request and maintain reasonable accommodations and to oppose unlawful practices.

224.    Plaintiff has consistently exercised rights protected by the Rehabilitation Act, including requesting and maintaining a full-time telework reasonable accommodation based on a documented disability, and advocating internally for legal compliance when investigating and adjudicating disability-based discrimination.

225.    Rather than supporting this protected activity, Defendants engaged in a concerted effort to coerce and silence Plaintiff. These efforts included retaliatory scrutiny of his accommodation, threats of relocation, demotion, or termination under the guise of a Reduction in Force, and the removal of similarly situated disability compliance personnel from their posts under pretextual justifications.

226.    Elon Musk's public statements, including those mocking disabled remote workers and opposing DEI frameworks, provided the ideological and political context for USDA's retaliatory policies. The USDA's application of these policies—especially targeting Plaintiff and civil rights enforcement personnel—was coordinated by Defendants Rollins, Brammer, Hutson, St. Clair, and Ihlenfeldt, with knowledge of Plaintiff's protected status and activities.

227.    These actions were intended to coerce Plaintiff into silence, suppress the lawful enforcement of the Rehabilitation Act, and deter further opposition to discriminatory practices. The effect has been a chilling of Plaintiff's protected activity, emotional and psychological distress, and ongoing fear of termination or reassignment.

228.    Defendants' coordinated conduct constitutes a conspiracy to violate Plaintiff's rights under 42 U.S.C. § 12203 and the Rehabilitation Act.

229.    Plaintiff seeks injunctive relief, compensatory and punitive damages, and any other relief the Court deems just and proper.

## COUNT IX
### Bivens Claim-Violation of Fifth Amendment Right to Continued Employment

**(brought against Elon Musk and Rollins in their Individual Capacities via Section 42 U.S.C. 1983)**

230.    Plaintiff realleges and incorporates all prior paragraphs.

231.    Plaintiff brings this claim pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), which provides a cause of action for damages against federal officials who violate constitutional rights under color of federal authority. The Fifth Amendment guarantees federal employees in the competitive service a constitutionally protected property interest in continued employment, which cannot be deprived without due process of law.

232.    Musk and Rolins, acting outside the scope of any lawful federal role and not entitled to qualified immunity, caused and participated in the deprivation of Plaintiff's due process rights, warranting personal liability for compensatory and punitive damages.

233.    Defendant Elon Musk, acting in his individual capacity and under color of federal advisory authority through the Department of Government Efficiency (DOGE), engaged in a pattern of conduct designed to coerce the resignation, reassignment, or removal of federal employees, including Plaintiff, without due process. These efforts included public statements encouraging retaliation against remote employees, and specific policy endorsements that were adopted and operationalized within USDA.

234.    As part of this pattern, Plaintiff was subjected to arbitrary performance requirements, including a directive that failure to send a weekly list of five completed tasks, sent at the direction of Musk and Rollins to Plaintiff via USDA's Department of Operations and via email from opm.gov, would result in discipline or termination. Such a requirement, applied discriminatorily and without legal basis, constitutes a deprivation of substantive and procedural due process, in violation of the Fifth Amendment to the United States Constitution.

235.    Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages, against Musk in his individual capacity for this ultra vires, retaliatory action.

## Count X

### Violation of 42 U.S.C. § 1981 – Intentional Racial Discrimination

### (Against Elon Musk in His Individual Capacity)

236.    Plaintiff realleges and incorporates all prior paragraphs. Defendant Elon Musk, acting outside the bounds of any official federal role, interfered with Plaintiff's federally protected rights as a Black employee to enjoy the benefits and protections of his federal employment contract, free from racial discrimination. As a qualified Black disabled employee, Plaintiff has the right to equitable and affirmative action under the Rehabilitation Act to continued employment via reasonable accommodations and equitable hiring opportunities via Schedule A.

237.    Musk's public comments opposing diversity, equity, and inclusion (DEI) efforts and disparaging remote employees were weaponized within the USDA's implementation of discriminatory policies such as DRP 2.0 and the Return-to-Office policy. These policies intentionally and disproportionately harmed Black federal employees, including Plaintiff, and were implemented with knowledge of their disparate impact. Defendant's actions violated 42 U.S.C. § 1981 and entitle Plaintiff to compensatory and punitive damages.

238.    Plaintiff is a Black federal employee in the competitive service who was threatened with disciplinary action and potential removal if he did not submit a weekly "5 bullets" email outlining tasks completed—despite no such requirement being imposed on similarly situated white employees. Several hundred White employees in DoD and USDA were told to stand down and not reply but Stewart was told to comply. This coercive condition was implemented under policies and cultural directives influenced by Defendant Elon Musk, who has publicly disparaged remote workers and DEI efforts, and who exerted advisory influence over the Department of Government Efficiency (DOGE), which collaborated with USDA leadership. These actions interfered with Plaintiff's right to maintain and enjoy the benefits of his

employment contract on equal terms, in violation of 42 U.S.C. § 1981. Defendant Musk acted outside the scope of any lawful federal authority and in his individual capacity, entitling Plaintiff to compensatory and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, based on the foregoing, requests the following relief:

A. A permanent injunction ending USDA's arbitrary and capricious reevaluation of Plaintiff's granted reasonable accommodation of remote work and barring its agents, employees and representatives, and any and all persons acting in concert with them, from engaging in any further unlawful discriminatory practices, policies, customs, usages as set forth herein;

B. An appointment of a third-party monitor or special master, based on the ongoing risk of irreparable harm and systemic harm to similarly situated individuals, to independently review all remote work accommodations requests and reevaluations from January 2024 to and continuing until January 2028, with quarterly reviews submitted to the Court;

C. A declaratory judgment that USDA's reasonable accommodation policies, practices and procedures challenged herein are unlawful and in violation of the Rehabilitation Act;

D. A declaratory judgment that Defendants St. Clair, Hutson, Allen, and Ihlenfeldt conspired to violate Plaintiff's rights under the Rehabilitation Act and the 5th Amendment of the United States Constitution in violation of 42 U.S.C. § 1985(3), and a declaratory judgment that Defendant Rollins failed to act to prevent the conspiracy to violate Plaintiff's rights under the Rehabilitation Act and the 5th Amendment of the United States Constitution, in violation of 42 U.S.C. § 1986;

E. An Order requiring USDA to initiate and implement programs that:

(1) will provide reasonable accommodations for for qualified employees with disabilities;

(2) will remedy the effects of USDA's past and present unlawful policies, practices and procedures as it relates to the reasonable accommodation requests; and

(3) will eliminate the continuing effects of the discriminatory practices described above;

F. $200,000,000.00 in non-pecuniary compensatory damages for emotional distress, mental anguish, pain and suffering, and reputational harm caused by Defendants' unlawful coercive conduct and retaliatory actions;

G. $2,000,000,000.00 in Punitive damages against any individual Defendant found to have acted with malice or reckless indifference to Plaintiff's federally protected rights;

H. Award Plaintiff reasonable attorneys' fees, if applicable, and litigation costs and expenses;

I. Declaratory Judgment declaring that the USDA's blanket policy requiring reevaluation of all reasonable accommodations for remote work issued over one year prior is: Contrary to the Rehabilitation Act; Arbitrary and capricious; Implemented without observance of required procedures; Invalid under the Administrative Procedure Act (5 U.S.C. § 706);

J. Preliminary and Permanent Injunction enjoining USDA and its officers, agents, and assigns from: Enforcing or implementing the aforementioned reevaluation policy; Mandating renewed medical documentation from individuals with approved reasonable accommodations absent individualized assessments; Taking any adverse employment action—including revocation of accommodations, or disciplinary recommendations—based on refusal to comply with the unlawful policy;

K. Mandamus or Equitable Relief requiring USDA to: Reinstate any remote work accommodations affected by the reevaluation policy; Refrain from future implementation of similar blanket policies absent compliance with statutory requirements; Issue formal notice of withdrawal or suspension of the policy to all affected employees;

L. Vacatur of the Policy and all associated actions arising from the reevaluation directive;

M. Costs and Fees as authorized under the Equal Access to Justice Act, 28 U.S.C. § 2412, and/or any other applicable provision;

N. Pecuniary compensatory damages in an amount to be determined by a jury at trial; O. Plaintiff also seeks costs and attorney's fees, if applicable, pursuant to the Equal Access to Justice Act and pursuant to 42 U.S.C. § 1988(b);

P. Any other equitable relief to which Plaintiff is entitled or the Court thinks is just and/or equitable;

Q. Pursuant to Rule 38 of the Federal Rules of Civil Procedure and applicable law, Plaintiff hereby demands a trial by jury on all issues so triable, including but not limited to his claims brought under 42 U.S.C. §§ 1985(3), 1986, the Administrative Procedure Act, and all other applicable constitutional and statutory provisions;

R. A declaration that Defendants' actions—individually and collectively—constituted unlawful coercion, intimidation, interference, and retaliation in violation of 42 U.S.C. § 12203 and the Rehabilitation Act, by targeting Plaintiff's protected activity, including the exercise and defense of his right to a reasonable accommodation and opposition to discriminatory practices;

S. A permanent injunction enjoining Defendants from further engaging in any act of coercion, intimidation, interference, or retaliation against Plaintiff or similarly situated employees based on the exercise of rights protected under the Rehabilitation Act or ADA;

T. Enjoin Defendants from reclassifying Plaintiff's position or converting it to any exempted personnel schedule (e.g., Schedule F) in retaliation for protected activity or as part of any unlawful effort to suppress enforcement of civil rights statutes;

U. A declaration that Defendants' actions against Plaintiff—a Competitive Service employee with a targeted disability, originally hired under Schedule A—violate USDA's obligations under 29 U.S.C. § 791(d) and 29 C.F.R. § 1614.203(d), which requires the agency to affirmatively support the retention and advancement of such individuals at all levels of federal employment;

V. A permanent injunction prohibiting Defendants from reclassifying Plaintiff's position under Schedule F or any similar designation that would alter his employment protections, in violation of the Rehabilitation Act's mandates to retain and advance individuals with targeted disabilities;

W. A permanent injunction prohibiting Defendants from processing Plaintiff under the DRP 2.0 or any similar forced resignation program without a signed agreement, and requiring USDA to immediately restore Plaintiff to his full telework status and remove any administrative leave designation not voluntarily elected by Plaintiff;

X. Plaintiff further requests that all damages awarded—including compensatory, consequential, and punitive damages—be assessed against the Defendants on a joint and several basis, as each acted in concert or with substantial participation in the unlawful conduct alleged herein;

Y. Pecuniary losses including but limited to lost wages, lost benefits, and out-of-pocket medical and legal expenses; and

Z. Consequential damages including but not limited to diminished future earnings and other foreseeable injuries proximately caused by Defendants' unlawful conduct.

Plaintiff brings this action not only to protect his own rights under the Constitution and the Rehabilitation Act, but to preserve the rule of law and defend the civil rights of all individuals with disabilities employed by the United States government. In the spirit of truth,

58

equity, and conscience, Plaintiff respectfully submits this Complaint in faith that the judicial process will provide redress where internal safeguards have failed. Plaintiff also acknowledges with reverence the recent passing of Pope Francis, a global voice for the marginalized, the poor, and the disabled. In speaking truth to power through this filing, may this seed of justice—planted in the soil of hardship and hope—bear good in good time.

## JURY TRIAL DEMANDED

Plaintiff hereby demandS a trial by jury on all issues so triable.

Respectfully Submitted on this 25th Day of April, 2025,

/s/ Plaintiff

Plaintiff, *pro se*

59

## CERTIFICATION

**I HEREBY CERTIFY** that on April 25, 2025,  and declare under penalty of
perjury under the laws of the United States of America that:

1. The matters sworn herein are made from my personal knowledge, and are true and correct to the best of my knowledge, except for statements made upon information and belief, and that I am competent to testify thereto.

3. This Complaint was filed with the Clerk for the Federal District Court for the District of Columbia along with a cover sheet, motion for preliminary injunction, motion for a temporary restraining order, motion to proceed anonymously and file exhibits under seal, motion for permission to file electronically; and a summons for each Defendant was requested from the Clerk, to be served upon the Defendants in accordance with  the Federal Rules of Civil Procedure.


____Plaintiff____    Name

_/s/ /PLAINTIFF/_    Signature

Executed on: _04/25/2025_

60