## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **FENYANG AJAMU STEWART**, <br><br> Plaintiff, <br><br> v. <br><br> **ELON MUSK**, *et. al.*, <br><br> Defendants. | Case No. 25-cv-1288 (CRC) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Fenyang Ajamu Stewart adjudicates civil rights complaints at the U.S. Department of Agriculture ("USDA" or "Department"). The Department permits him to work remotely as a reasonable accommodation for several disabilities. Proceeding *pro se*, Stewart claims that USDA officials, motivated by discriminatory animus on the part of Elon Musk, have adopted a policy of reevaluating existing remote-work arrangements for disabled employees. This policy, Stewart asserts, puts him at risk of losing his accommodation. He further alleges that Department officials have tried to force him to resign his position as a part of a campaign against personnel with responsibilities related to diversity, equity, and inclusion ("DEI").

Stewart has sued Mr. Musk, USDA Secretary Brook Rollins, and five other agency officials ("Defendants"). His complaint brings nine counts packaged under the Rehabilitation Act and other federal civil rights statutes, the Fifth Amendment, and the Administrative Procedure Act. The government moves to dismiss the complaint for insufficient service of process, lack of subject matter jurisdiction, and failure to state a claim. Excusing relatively insignificant errors in service in light of Stewart's *pro se* status but finding that he has not established this Court's subject matter jurisdiction over certain of his claims and has failed to state others, the Court will grant the government's motion on those grounds as to all Defendants.

## I.    Background

Fenyang Ajamu Stewart is an Equal Employment Specialist within the USDA's Office of the Assistant Secretary for Civil Rights.  Compl. ¶ 41.  Since 2022, he has worked remotely as a reasonable accommodation for post-traumatic stress disorder, panic disorder, and back pain.  Id. ¶¶ 3, 43.  Stewart generally alleges that following the creation of the Department of Government Efficiency, Elon Musk, Secretary Rollins, and several other officials at the Department instituted a variety of policies with the aim of eliminating remote work as a reasonable accommodation for disabled employees like him.  Id. ¶¶ 5; 96–100, 111–13.  The agency's goal, Stewart claims, was inspired by documented animus against disabled people on the part of Mr. Musk.  Id.  ¶¶ 101–02. Stewart further alleges that a variety of other policies instituted by USDA threatened his job position due to both its relationship to DEI work and reductions in force that targeted disabled employees.  Id. ¶¶ 80–82, 114.  Finally, he claims that employees at USDA tried to force him to resign from his position.  Id. ¶¶ 147–52.

Defendants have moved to dismiss the complaint for improper service of process, lack of subject matter jurisdiction, and failure to state a claim.  Stewart opposes.  He moves separately to strike the motion to dismiss and for entry of default on the ground that the government did not initially include a certificate of service along with the motion as required by local rules.

## II.   Legal Standards

### A.  Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss a claim if it lacks subject matter jurisdiction to entertain the claim.  In evaluating whether it has subject matter jurisdiction, a court must "accept facts alleged in the complaint as true and draw all reasonable inferences from those facts in plaintiffs' favor."  Humane Soc'y of the U.S. v.

<u>Vilsack</u>, 797 F.3d 4, 8 (D.C. Cir. 2015).  If a court lacks subject-matter jurisdiction, it "cannot proceed at all in any cause."  <u>Hancock v. Urb. Outfitters, Inc.</u>, 830 F.3d 511, 513 (D.C. Cir. 2016) (citation omitted).

B.  <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A court deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6) must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  <u>Am. Nat. Ins. Co. v. FDIC</u>, 642 F.3d 1137, 1139 (D.C. Cir 2011) (quoting <u>Thomas v. Principi</u>, 394 F.3d 970, 972 (D.C. Cir. 2005)).  To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a plausible claim for relief.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is plausible if the pleaded facts allow the court to reasonably infer that the defendant is liable for the misconduct alleged.  <u>Iqbal</u>, 556 U.S. at 678.  While a court must take the complaint's factual allegations as true, it need not accept legal conclusions, and mere "labels" or "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice."  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).

C.  <u>Pro Se Pleading Standards</u>

"The pleadings of *pro se* parties are to be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'"  <u>Tyson v. Brennan</u>, 277 F. Supp. 3d 28, 35 (D.D.C. 2017) (second alteration in original) (quoting <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam)).  Courts assess *pro se* litigants' complaints "in light of all filings, including filings responsive to a motion to dismiss," such as the opposition to the motion and any attached documents.  <u>Ho v. Garland</u>, 106 F.4th 47, 50 (D.C. Cir. 2024) (quotation marks omitted)

(quoting <u>Brown v. Whole Foods Mkt. Grp., Inc</u>., 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam)).

### III.  Analysis

Stewart's complaint distributes his grievances over the following nine counts:

- Count I: Civil Conspiracy to Violate Section 501 of the Rehabilitation Act;

- Count II: Failure to Prevent Civil Rights Violations;

- Count III: Conspiracy to Violate Plaintiff's Fifth Amendment Rights;

- Count V: Violation of the Administrative Procedure Act;

- Count VI: Civil Conspiracy to Violate Section 501 of the Rehabilitation Act;

- Count VII: Violation of Equal Protection under the Fifth Amendment;

- Count VIII: Conspiracy to Coerce, Intimidate, and Retaliate in Violation of 42 U.S.C. § 12203;

- Count IX: Bivens Claim – Violation of Fifth Amend Right to Continued Employment; and

- Count X: Violation of 42 U.S.C. § 1981 – Intentional Racial Discrimination.[1]

Rather than proceed count-by-count, the Court can group Stewart's claims into four subject-matter categories.  First are claims that relate to the Department's purported effort to eliminate his reasonable accommodation (Count I, Count II, Count III, Count V, Count VI, Count VII, and Count VIII).  Second is a claim alleging he was retaliated against for speaking out about USDA's treatment of him and other disabled employees (Count VIII).  Third are claims pertaining to what he characterizes as an agency plot to force him from his job (Counts I-

---

[1] The complaint does not contain a Count IV.

III and VI, in passing).  And last are a <u>Bivens</u> claim against Musk and Rollins in their individual

capacities (Count IX) and a claim under 42 U.S.C. § 1981 against Musk in his individual

capacity (Count X).

After looking past relatively minor errors in service in view of Stewart's *pro se* status, the

Court will analyze each of the four categories of claims, concluding that it lacks jurisdiction over

those claims related to Stewart's reasonable accommodation and anticipatory removal and that

Stewart has failed to state claims under <u>Bivens</u> and § 1981.  Finally, the Court will deny

Stewart's motion to strike the government's motion to dismiss and his motion for entry of

default.

A.  <u>Service of Process</u>

Though its motion is not a paragon of clarity, the government appears to object to service

on all Defendants, in whatever capacity, on the ground that Stewart improperly served the United

States by mailing a copy of the complaint and summons to the Attorney General himself rather

than using a non-party to do so.  <u>See</u> Defs.' Mot. at 4–5.  It also suggests that Stewart committed

the same blunder when he personally mailed the service materials to Secretary Rollins in her

official capacity.  <u>Id.</u>

Some background is in order.  Different rules apply to serving federal officers and

employees in their official and personal capacities.  <u>See</u> FRCP 4(i)(2), (i)(3).  Serving an officer

or employee in her official capacity entails two steps:  First, the plaintiff must serve the "United

States" by providing the summons and complaint to both the Attorney General and the U.S.

Attorney's office for the district where the complaint is brought.  <u>See</u> FRCP 4(i)(2) (requiring

compliance with Rule 4(i)(1)).  Second, the plaintiff must serve the official at her agency

address.  <u>Id.</u>  Both steps may be accomplished by mail.  <u>See</u> FRCP 4(i)(1), (i)(2).  But there's

wrinkle: the mailing must be made by a non-party, not the plaintiff.  See Smith v. United States, 475 F. Supp. 2d 1, 9 (D.D.C. 2006) (collecting cases holding that service of the United States and its officials under Rule 4(i) must also comply with Rule 4(c)(2), which requires service by a non-party).  And here, it appears that in attempting to serve Secretary Rollins in her official capacity, Stewart mailed the service package to the Attorney General and to Secretary Rollins's agency address *himself* — thus stumbling at both steps of the process of serving the United States.  See ECF No. 19.

As for service on federal officers in their individual capacities, a plaintiff must likewise serve the United States through the Attorney General and the applicable U.S. Attorney's office.[2]  See FRCP 4(i)(3).  As previously noted, Stewart sent his service package to the Attorney General himself, rather than having another individual do so.  See ECF No. 19. Therefore, one of the mistakes he made when serving Secretary Rollins in her official capacity applies to service of the individual capacity defendants as well.

The government is thus correct that service in this case was not entirely proper.  But the Court will excuse the lapses in service because Stewart is representing himself.  *Pro se* plaintiffs are "allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings."  Moore v. Agency for Int'l Dev., 994 F.2d 874, 876 (D.C. Cir. 1993).  As such, service requirements "should not be enforced with draconian rigidity where courts have not first informed *pro se* plaintiffs of the consequences of failing to effect proper service and where defendants are in no material way prejudiced by a minor defect in the manner in which service of process was attempted."  Zavadovsky v. Rabl, No. 24-cv-1997 (RC), 2025 WL 2466024, at *12

---

[2] A plaintiff must also serve the official by means authorized for service of non-government officials under Rules 4(e), 4(f), or 4(g).  See FRCP 4(i)(3).  Stewart appears to have complied with this requirement.  See ECF No. 16, 17, 18.

(D.D.C. Aug. 27, 2025) (quoting <u>Lindsey v. United States</u>, 448 F. Supp. 2d 37, 47 n.6 (D.D.C. 2006)).[3]

Applying these standards, the Court declines to dismiss the case for improper service. First, the Court did not advise Stewart to correct the means of service. Second, any error was relatively minor and did not prejudice any Defendant. While Stewart may not have enlisted a non-party to mail the summons and complaint to the Attorney General and Secretary Rollins, he did use a non-party to mail the service materials to the U.S. Attorney. <u>See</u> ECF No. 11. On top of that, he used a process server to personally serve materials to the individual capacity defendants, including Secretary Rollins. <u>See</u> ECF No. 16, 17, 18.[4] All Defendants were therefore on notice of the claims against them, and the government has appeared to ably assert their defenses.

---

[3] The Court will extend these liberal *pro se* standards to Mr. Stewart even though, as the government notes, his LinkedIn profile and an internet search indicate that he graduated from law school. <u>See</u> Defs.' Mot. at 3. While experienced lawyers typically are not given leeway when they chose to represent themselves, <u>see, e.g.</u>, <u>Richards v. Duke Univ.</u>, 480 F. Supp. 2d 222, 235 (D.D.C 2007), there is no evidence before the Court that Stewart has ever practiced law or been licensed to do so. Indeed, an on-line search reveals that he is not barred in either the District of Columbia or Virginia, where he resides. As a result, he is entitled to some degree of solicitude. <u>See, e.g.</u>, <u>Stankevich</u> v. Kaplan, 156 F. Supp. 3d. 86, 98 (D.D.C. 2016) ("[A]though [the plaintiff] holds a law degree, he is still a pro se litigant and cannot be held to the same standard as a [licensed] lawyer[.]"); <u>Newman v. Howard University of Law</u>, 715 F. Supp. 3d. 86, 101 (D.D.C. 2024) (extending *pro se* standards to law-student plaintiff).

[4] One exception may be Defendant Patricia St. Clair, who is an Associate Assistant Secretary for Civil Rights at USDA. The Court permitted Stewart to provide the service package to her by alternative means, which he appears to have done by US mail. <u>See</u> Minute Order, September 4, 2025; ECF No. 22, Ex. 1 at 2 (providing proof of delivery). But it is not exactly clear from the docket if service was ultimately accomplished.

B.  Subject Matter Jurisdiction

   *1.  Reasonable Accommodation Claims*

Turning to the substance of the complaint, Stewart brings several claims related to

Defendants' alleged effort to eliminate his remote work accommodation, as well as a claim

concerning purported retaliation against him for speaking out against Department policies that he

claims targeted disabled employees like himself.  Because Stewart has not administratively

exhausted any of these claims, this Court cannot hear them.

As a threshold matter, although Stewart styles some of his claims as violations of the

Administrative Procedure Act ("APA"), the Constitution, and various torts, these claims

fundamentally concern his reasonable accommodation.  See e.g., Compl. ¶ 189 (discussing

policies to undo Rehabilitation Act accommodations writ large); id. ¶ 221 (similar).  And the

Rehabilitation Act "provides the exclusive judicial remedy for federal employees who allege that

they are victims of workplace discrimination based on disabilities."  Husain v. Smith, No. 15-cv-

708 (RDM), 2016 WL 4435177, at *4 (D.D.C. Aug. 19, 2016) (collecting cases).  As a result,

"[p]arties cannot simply rename Rehabilitation Act claims" as APA claims, torts, or

Constitutional violations.  Welch v. Powell, No. 16-cv-0509 (RC), 2016 WL 6806211, at *5

(D.D.C. Nov. 17, 2016) (cleaned up) (dismissing tort claims based on violations of the

Rehabilitation Act); see also Grant v. Dep't of Treasury, 194 F. Supp. 3d 25, 30 (D.D.C. 2016)

(dismissing a would-be APA claim because the Rehabilitation Act provided an adequate

remedy); Paegle v. Dep't of Interior, 813 F. Supp. 61, 67 (D.D.C. 1993) (same for Constitutional

claims).  "To determine whether claims are preempted by the Rehabilitation Act, courts must

determine whether the party is 'seeking to redress the violation of rights guaranteed by'" the act.

Welch, 2016 WL 6806211, at *5 (brackets omitted, quoting Davis v. Passman, 442 U.S. 228,

247 n.26 (1979)).  Here, Stewart leaves little doubt:  he is primarily concerned with his rights as a disabled employee of the federal government and in particular with his reasonable accommodation to work from home due to his disabilities.  See, e.g., Compl. ¶¶ 188, 199, 221, 243.  The Rehabilitation Act precludes the consideration of these claims insofar as they are brought in tort or pursuant to the APA or the Constitution.  See Welch, 2016 WL 6806211, at *5; Grant, 194 F. Supp. 3d at 30; Paegle, 813 F. Supp. at 67.

To the extent Stewart brings claims under the Rehabilitation Act itself, whether related to his accommodation or to the alleged retaliation he suffered for speaking out against various policies, he has failed to exhaust those claims.  "The Rehabilitation Act requires individuals to exhaust administrative remedies before they can file suit to enforce the Act's protections."  Doak v. Johnson, 798 F.3d 1096, 1099 (D.C. Cir. 2015) (citing, e.g., 29 U.S.C. § 794a(a)(1)).  And while not every "procedural misstep" in the administrative process is jurisdictional under the Rehabilitation Act, the absence of a "final administrative disposition of a complaint, or any reviewable final administrative action at all" poses a jurisdictional bar.  Id. at 1104.  Stewart acknowledges he has not exhausted his remedies, see Pl.'s Opp'n at 10–11, and points to no final administrative action.  This Court therefore cannot at this juncture consider the claims related to his reasonable accommodation or the agency's purported retaliation against him.

Stewart counters that the Rehabilitation Act's exhaustion requirements are prudential rather than jurisdictional.  See id. at 11.  But, again, a failure to obtain a final decision from the agency is a jurisdictional defect for claims under the Rehabilitation Act.  See Al 'Zaiem v. Mayorkas, No. 22-civ-3804 (JEB), 2023 WL 4999177, at *7 (D.D.C. Aug. 4, 2023) (quoting Doak, 798 F.3d at 1103).  Stewart similarly argues that availing himself of the administrative scheme would have been "futile" because he had been told that he enrolled in the Deferred

Resignation Program, participation in which apparently required employees to waive all pending claims against the agency. Pl.'s Opp'n at 11. But Stewart insists he did *not* sign up for the program, which an agency designee later confirmed. Compl. ¶ 160. Therefore, raising these claims would not have been futile, as Stewart does not contend that he waived his right to bring the claims (and indeed remained employed at the agency).

### 2. *Anticipated Removal Claims*

Stewart also brings claims related to his anticipated removal (or forced resignation) via agency reductions in force and other policies that purportedly targeted disabled employees and employees who perform work related to DEI. See e.g., Compl. ¶¶ 147–50.

But, as the government points out, these claims are channeled to forums other than this Court by the Civil Service Reform Act ("CSRA"). The CSRA is "comprehensive and exclusive." Grosdidier v. Broad. Bd. of Govs., 560 F.3d 495, 497 (D.C. Cir. 2009). It "regulates virtually every aspect of federal employment" and "constitutes the remedial regime for federal employment and personnel complaints." Nyunt v. Broad. Bd. of Gov., 589 F.3d 445, 448 (D.C. Cir. 2009) (cleaned up). And central to the CSRA's framework is "the primacy" of the Merit System Protection Board ("MSPB") "for administrative resolution of disputes over adverse personnel action, . . . and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review[.]" United States v. Fausto, 484 U.S. 439, 449 (1998). The CSRA accordingly divests this court of jurisdiction except under certain limited exceptions that are not applicable here. 5 U.S.C § 7703(a), (b)(1)(A). Stewart's claims of a managerial conspiracy to drive him from his job clearly relate to his employment at a federal agency and accordingly fall within the scope of the CSRA. See Elgin v. Dep't of Treasury, 567 U.S. 1, 8–9 (2012); Nyunt,

589 F.3d at 448; 5 U.S.C. §§ 2302(a)(2)(A)(iii), 7512(1).  The Court therefore is powerless to consider them.

Stewart offers several counterarguments, but all come up short.  First, he claims that because there has been no adverse action (i.e., he has not actually been fired), the CSRA does not govern.  See Pl.'s Opp'n at 13.  That argument taken at face value would mean that the case is not ripe, because Stewart still has his job.  More fundamentally, the D.C. Circuit has been clear that plaintiffs who challenge actions within the context of their federal employment that the CSRA does not cover may not be given "greater rights than were available under the CSRA." Graham v. Ashcroft, 358 F.3d 931, 934 (D.C. Cir. 2004) (citing Fausto at 449–50).  And "[g]ranting [Stewart] a right of direct judicial review" for a *theoretical* resignation and *potential* termination "would give him greater rights than the CSRA affords" to individuals who suffer actual, completed adverse actions.  Id. at 128.

Next, Stewart suggests that his constitutional and conspiracy claims fall outside the CSRA's coverage.  But the case he cites, Pope v. Bond, 641 F. Supp. 489 (D.D.C. 1986), did not consider CSRA preclusion, the broad sweep of which the D.C. Circuit has more recently confirmed, see Ashcroft, 358 F.3d. at 934–35.  And critically, the plaintiff in Pope was no longer employed by the agency after it placed him on disability retirement, which he claimed was part of an effort to silence him.  641 F. Supp at 492.  As noted above, Stewart was employed at the agency when he filed suit, confirming the applicability of the CSRA.  And Stewart's constitutional claims are not for this Court's consideration, either.  See Elgin, 567 U.S. at 12 ("[C]onstitutional claims, such as claims that an agency took adverse employment action in violation of an employee's [constitutional] rights, . . . must be brought within the CSRA scheme.").

11

Stewart similarly argues that this Court may hear his civil rights challenges, citing <u>Spence v. Straw</u>, 54 F.3d 196 (3rd Cir. 1995).  But in that case—which did not implicate the CSRA—the Third Circuit held that exhaustion was required before bringing a claim under the Rehabilitation Act.  <u>Id.</u> at 202–03.  Therefore, to the extent <u>Spence</u> applies to Stewart's case at all, it only confirms that his Rehabilitation Act claims must be exhausted, not that his general challenge to the agency's policies concerning disabled employees may bypass both the Rehabilitation Act and the CSRA.[5]

C.  <u>Failure to State a Claim</u>

Next up are Stewart's <u>Bivens</u> claim for violations of his Fifth Amendment rights against Musk and Rollins in their individual capacities and his claim against Musk under 42 U.S.C. § 1981.  Neither states a valid claim.

*1. Bivens Claim*

A "court may not fashion a <u>Bivens</u> remedy if Congress already has provided . . . an alternative remedial structure."  <u>Egbert v. Boule</u>, 596 U.S. 482, 493 (2022) (quotation marks omitted).  Here, the CSRA and Rehabilitation Act qualify as sufficient remedial structures.  <u>See e.g.</u>, <u>Stewart v. Raimondo</u>, No. 23-civ-1525, 2024 WL 150229, at *5 (E.D. Va. Jan. 12, 2024) ("[S]pecial factors counsel against granting an extension of <u>Bivens</u> because plaintiff has available to him other forms of relief through his . . . Rehabilitation Act claims."); <u>Davis v. Billington</u>, 681 F.3d 377, 387 (D.C. Cir. 2012) ("[T]he CSRA's lack of relief for [plaintiff] does not prevent it from being a comprehensive remedial scheme that precludes us from creating a

---

[5] Stewart does not argue that administrative channeling would have been futile given the current functioning of the MSPB.  <u>See, e.g.</u>, <u>Nat'l Ass'n of Immigr. Judges v. Owen</u>, 139 F.4th 293, 305 (4th Cir. 2025).  The Court therefore expresses no view on that argument.

Bivens remedy." (internal quotation marks omitted)).  Stewart therefore cannot bring a Bivens claim.

### 2.  Section 1981 Claim

Stewart's § 1981 count likewise fails.  This claim again appears to be a Rehabilitation Act claim pleaded under a different mantle, as Stewart asserts that as "a qualified Black disabled employee," he "has the right to equitable and affirmative action . . . to continued employment via reasonable accommodations[.]"  Compl. ¶ 263.  But even if the claim could be read to extend beyond his Rehabilitation Act claims, the complaint nowhere alleges that Stewart suffered an adverse employment action, such as a lack of promotion or termination, on account of his race. See Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (Kavanaugh, J.) ("The initial problem for [plaintiff's] legal argument is that he was not fired or denied a job or promotion, and he did not suffer any reductions in salary or benefits, which are the typical adverse actions in employment discrimination cases.").  Stewart's § 1981 claim therefore must be dismissed as well.

### D.  Motion to Strike and Motion for Entry of Default

Finally, Stewart moves to strike the government's motion to dismiss for failure to include a certificate of service, as required by the local and federal rules, and he moves for entry of default on the same ground.  See ECF No. 25, No. 26.  As to the former, Stewart argues that because he is not an electronic filer, the absence of a certificate of service means there is "no proof that [he] was ever served."  ECF No. 25 at 1.  This argument is rich coming from a plaintiff who asks to be excused from strict service requirements.  In any case, as Defendants note, Stewart had notice of the filings, in no small part because the Court ordered him to respond to the motion to dismiss, which he did a day later.  Defs.' Reply at 8.  Further, the government

quickly corrected its mistake.  <u>See</u> ECF No. 28.  Stewart's motion for entry of default for failure to provide a certificate of service is also a dead letter, as Defendants have plainly "plead[ed] or otherwise defend[ed]" themselves in response to Stewart's complaint.  FRCP 55(a).  The Court accordingly denies both motions.

**IV.   Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss and dismiss the complaint and the case.  A separate Order shall accompany this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>February 11, 2026</u>